**Curtis T. BUSSE and Myrtle Busse, Petitioners-Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

**No. 72–1957.**

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1973.

Decided June 1, 1973.

Scott P. Crampton, Asst. Atty. Gen., William S. Estabrook, III, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for respondent-appellant.

John S. Best, Robert A. Schnur, Milwaukee, Wis., for petitioners-appellees.

Before HASTINGS, Senior Circuit Judge, CUMMINGS, Circuit Judge, and CAMPBELL, Senior District Judge.*

HASTINGS, Senior Circuit Judge.

Pursuant to § 7483 of the Internal Revenue Code of 1954, the Commissioner of Internal Revenue brings this appeal from a decision and order of the United States Tax Court, 58 T.C. 389 (1972), holding that he erroneously determined a deficiency in the 1967 federal income tax of Curtis T. Busse (the taxpayer) and Myrtle Busse [1] of Randolph, Wisconsin. The parties stipulated all the facts.

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. Myrtle Busse is the wife of Curtis T. Busse and is a party to these proceedings solely because she filed a joint income tax return with her husband.

Sometime before March 20, 1958, taxpayer invented a method and machine for stacking cans on pallets. On that date, he assigned an undivided one-half interest in the invention to his brother. A patent covering the invention issued to taxpayer on August 16, 1960. By reason of the assignment, taxpayer and his brother each owned one-half of the patent. When the brother died on July 10, 1962, his interest passed to his widow. Taxpayer and the widow organized Busse Bros., Inc., a Wisconsin corporation, on January 2, 1966, in which at all relevant times each owned 50 per cent of the issued and outstanding stock. On the same day the corporation was organized, taxpayer, his sister-in-law and the corporation entered into an oral agreement by which each shareholder sold his entire interest in the patent to the corporation.[2] In return, the corporation agreed to pay taxpayer and his sister-in-law quarterly installments, during the life of the patent, equal to five per cent of the corporation's net selling price (as that term was defined in the agreement) of devices covered by the patent claims.

■ During 1967 the corporation paid taxpayer $36,029.01 as his one-half share of the payments required under the agreement. Although taxpayer's 1966 assignment to the corporation was plainly "[a] transfer * * * of property consisting of * * * an undivided interest [in all substantial rights to a patent] which includes a part of all such rights, by any holder[3]," as described in § 1235(a) of the Code, taxpayer was not able to treat the 1967 payments as long-term capital gain under § 1235. Such treatment was precluded by the operation of § 1235(d), because taxpayer's assignment to the corporation was a transfer between related persons, specifically, in the words of § 267(b)(2) as modified by § 1235(d)(1), between "[a]n individual and a corporation 25 percent or more in value of the outstanding stock of which is owned * * * by * * * such individual." However, taxpayer was able to and did report the entire amount of the 1967 payments as long-term gain received upon the sale of a capital asset, under the general provisions of §§ 1221 and 1222.[4] The Commissioner, pursuant to the appropriate regulations under § 483, nevertheless concluded that only $33,011.81 of the 1967 payments constituted capital gain, while the remaining $3,017.20 was unstated interest on an installment sale, taxable at ordinary income rates. In line with this analysis, the Commissioner determined an income tax deficiency for 1967 of $1,659.47. He rejected taxpayer's contention that § 483(f)(4) protected the 1967 payments from unstated interest treatment. Taxpayer petitioned the Tax Court for a redetermination, and that court determined that there was no 1967 deficiency. This appeal followed.

■ The Tax Court's decision was of a narrow legal question: Given a patent transfer which is described in § 1235(a) of the Code but which does not receive its capital gain treatment under § 1235, should some part of the payments received pursuant thereto be treated as unstated interest under § 483, or is such treatment precluded by the exception contained in § 483(f)(4)? We agree with the Tax Court that such payments do qualify for the statutory exception[5] and, accordingly, affirm the decision and order.

Section 483, "Interest on certain deferred payments," was added to the Code by the Revenue Act of 1964, Pub.L.No.

---

2. The oral agreement was reduced to writing by an assignment executed April 28, 1967.

3. As an "individual whose efforts created such property," taxpayer comes within the definition of "holder" for purposes of § 1235. Code, § 1235(b)(1).

4. Rev.Rul. 69–482, 1969–2 Cum.Bull. 164.

5. In so holding, the Tax Court specifically adhered to its prior decision in Floyd G. Paxton, 53 T.C. 202 (1969). Although the Commissioner did not elect to appeal *Paxton*, he expressed his disagreement with the result by means of a nonacquiescence, 1971–2 Cum.Bull. 4.

88–272, § 224(a), 78 Stat. 19, 77. The section provides, in pertinent part:

"(a) * * * [I]n the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment * * * which bears the same ratio to the amount of such payment as the total unstated interest [6] under such contract bears to the total of the payments * * * which are due under such contract.

* * * * * *

"(c) * * *

"(1) * * * Except as provided in subsection (f), this section shall apply to any payment on account of the sale or exchange of property which constitutes part or all of the sales price and which is due more than 6 months after the date of such sale or exchange under a contract—

"(A) under which some or all of the payments are due more than one year after the date of such sale or exchange, and

"(B) under which * * * there is total unstated interest."

. The report of the Committee on Ways and Means of the House of Representatives,[7] which accompanied the Revenue Act of 1964 on its sojourn through the Congress, explained the general reasons for the new provisions:

"Your committee sees no reason for not reporting amounts as interest income merely because the seller and purchaser did not specifically provide for interest payments. This treats taxpayers differently in what are essentially the same circumstances merely on the grounds of the names assigned to the payments. In the case of depreciable property this may con-

vert what is in reality ordinary interest income into capital gain to the seller. At the same time the purchaser can still recoup the amount as a deduction against ordinary income through depreciation deductions. Even where the property involved is a nondepreciable capital asset, the difference in tax bracket of the seller and buyer may make a distortion of the treatment of the payments advantageous from a tax standpoint. Your committee believes that manipulation of the tax laws in such a manner is undesirable and that corrective action is needed." [8]

As specifically mentioned in subsection (c)(1), *supra,* subsection (f) contains outright exceptions to the applicability of § 483. There are five exceptions in all, of which only that contained in subsection (f)(4) concerns us:

"(4) Sales or exchanges of patents. —This section shall not apply to any payments made pursuant to a transfer described in section 1235(a) (relating to sale or exchange of patents)."

On brief, the Commissioner agrees that the payments made pursuant to the 1966 assignment "appear to fall within the literal language of Section 1235(a)." It would seem, then, that taxpayer is entitled to be excepted from the operation of § 483 by the "plain, unambiguous and understandable" words of the statute. United States v. Chused, 8 Cir., 209 F.2d 548, 550 (1954). This situation calls to mind the words of the late Circuit Judge Major for our court in Durkee Famous Foods, Inc. v. Harrison, 136 F.2d 303, 307 (1943), rev'd on other grounds, 320 U.S. 718, 64 S.Ct. 367, 88 L.Ed. 422:

"This clear and unambiguous language calls for the application of an-

---

6. "[T]he term 'total unstated interest' means, with respect to a contract for the sale or exchange of property, an amount equal to the excess of—
"(1) the sum of the payments * * * which are due under the contract, over
"(2) the sum of the present values of such payments and the present values of any interest payments due under the contract." Code, § 483(b).

7. H.R.Rep. No. 749, 88th Cong., 1st Sess. (1964).

8. 1964–1 Cum.Bull. (Part 2) 125, 196. The Senate's Committee on Finance agreed completely with the views of the House committee. S.Rep. No. 830, 88th Cong., 1st Sess. (1964), 1964–1 Cum.Bull. (Part 2) 505, 606.

other rule, long recognized by the courts but too often, we fear, honored only by lip service. In United States v. Standard Brewery, 251 U.S. 210, 217, 40 S.Ct. 139, 140, 64 L.Ed. 229, the court said: 'Nothing is better settled than that in the construction of a law its meaning must first be sought in the language employed. If that be plain, it is the duty of the courts to enforce the law as written, provided it be within the constitutional authority of the legislative body which passed it.' Again, in United States v. Merriam, 263 U.S. 179, 187, 44 S.Ct. 69, 71, 68 L.Ed. 240, 29 A.L.R. 1547, the court said: 'But in statutes levying taxes the literal meaning of the words employed is most important, for such statutes are not to be extended by implication beyond the clear import of the language used.' Again, in United States v. Missouri P. R. Co., 278 U.S. 269, 277, 49 S.Ct. 133, 136, 73 L.Ed. 322, the court said: 'We are therefore bound by the words employed and are not at liberty to conjure up conditions to raise doubts in order that resort may be had to construction. * * * Construction may not be substituted for legislation.'

"Another rule often overlooked in construing a revenue statute is that in a doubtful situation the taxpayer is entitled to the benefit of the doubt. As was said by the court in United States v. Merriam, supra, 263 U.S. at page 188, 44 S.Ct. at page 71, 68 L.

Ed. 240, 29 A.L.R. 1547: 'If the words are doubtful, the doubt must be resolved against the government and in favor of the taxpayer.' "

We do not consider that the law in this area of statutory construction has changed appreciably since Judge Major expressed it.

■ Nevertheless, the Commissioner seeks to avoid the consequences of strict construction by invoking the judicially developed rule which justifies "a departure from the letter of the law" when adherence to the letter would cause an absurdity "so gross as to shock the general moral or common sense" and when it is plain that Congress intended "that the letter of the statute is not to prevail." Crooks v. Harrelson, 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930).

■ The best indication of the intent of Congress is, of course, the literal wording of the statute itself, which we have held is not ambiguous. Discussion of subsection (f)(4) in the congressional committee reports is minimal and perfunctory,[9] shedding no light on the intent the Commissioner purports to see of avoiding the result the Tax Court decision dictates. Contemporaneous agency interpretation of the statute, as represented by Treas.Reg. § 1.483–2(b)(4),[10] is largely a restatement of the statute and, when considered in the light most favorable to the Commissioner's position, is ambiguous in a way that the statute is not. To turn from a clear statute to

9. The entire discussion in the House report follows:

"The bill specifies five situations in which this provision [§ 483] is not to apply: * * * Fourth, this provision is not to apply in the case of payments with respect to patents, which are treated as capital gain under present law." 1964–1 Cum.Bull. (Part 2) 125, 197–198.

The Senate report is identical. 1964–1 Cum.Bull. (Part 2) 505, 607. Moreover, as the Tax Court pointed out, 58 T.C. at 394 n.5, Congress has used the phrase "described in section 1235" elsewhere in the Code without mentioning subsection

(a), thus indicating that it is aware of a distinction between the two references. See Code, §§ 871(a)(1)(B) and 1441(b) and (c)(5).

10. "Section 483 does not apply to any payments made pursuant to a transfer described in section 1235(a) (relating to sale or exchange of patents). The preceding sentence does not apply to transfers which are not described in section 1235(a) but which receive capital gain treatment under another section of the Code." The regulations under § 483 were adopted on January 24, 1966. T.D. 6873, 1966–1 Cum.Bull. 101.

an unclear regulation for guidance is hardly an accepted method of interpretation.

To support his contention that the plain language of the statute leads to absurd results, the Commissioner cites two examples of what he terms "anomalous situation[s]." The first of these examples proceeds from the Commissioner's assumption that Congress created a favored class of taxpayers in enacting § 1235, a class of which the present taxpayer is not a member. Characterizing the exception of § 483(f)(4) as "a benefit essentially ancillary to the benefits provided by Section 1235," the Commissioner is disturbed by the specter of the present taxpayer obtaining some of the benefits of class membership without qualifying for actual membership in the class.

The second example springs from the interrelationship of words and phrases within the various subsections of § 1235. The word "holder" in subsection (a) is defined in subsection (b). As we have noted previously,[11] taxpayer qualifies as a holder under subsection (b)(1) because he "created" the property transferred. The Commissioner points out, however, that subsection (b)(2)(B) makes eligibility for holder status by persons other than "creators" turn on their not being related to the creator within the meaning of subsection (d). Thus, for example, should Busse Bros., Inc., assign the patent rights to a third party at some future time, it may not claim the benefit of the § 483(f)(4) exception even if, like taxpayer, it can qualify the

transfer for capital gain treatment under §§ 1221 and 1222. Or, as the Commissioner states the situation in his brief:

> "Put another way, Section 1235-type transactions disqualified because of an unauthorized 'transfer' would not be subject to imputed interest, but Section 1235-type transactions disqualified because of failure to meet the definition of 'holder' would be so subject. The proper distinction should lie, in our view, not in *how* the transaction became disqualified, but rather in *whether* the transaction was disqualified under Section 1235." (Emphasis in original.)

 However much the statute, in operation, may offend the Commissioner's sense of symmetry and propriety, we cannot say that the results it causes are either absurd or unintended by Congress. Courts have no power (just as the Commissioner has no power in his capacity as an administrative official) [12] "to rewrite legislative enactments to give effect to" their "ideas of policy and fitness or the desirability of symmetry in statutes." United States v. Shirah, 4 Cir., 253 F.2d 798, 800 (1958). The powers of repeal and amendment are uniquely legislative in their nature. *See* Lang v. Commissioner, 289 U.S. 109, 113, 53 S.Ct. 534, 77 L.Ed. 1066 (1933); Iselin v. United States, 270 U.S. 245, 250–251, 46 S.Ct. 248, 70 L.Ed. 566 (1926); Arkansas Valley Industries, Inc. v. Freeman, 8 Cir., 415 F.2d 713, 718 (1969). We find additional support for our position in the opinion of the Eighth Cir-

---

11. *See* note 3, *supra.*

12. Congress has delegated to the Commissioner the task of prescribing "all needful rules and regulations for the enforcement" of the internal revenue laws. Code, § 7805(a). *See* Bingler v. Johnson, 394 U.S. 741, 749–751, 89 S.Ct. 1439, 22 L. Ed.2d 695 (1969); United States v. Correll, 389 U.S. 299, 307, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967). It is nevertheless true that in so doing he may not act un-

reasonably and unrealistically in the light of the statute he purports to interpret. United States v. Cartwright, 411 U.S. 546, 93 S.Ct. 1713, 36 L.Ed.2d 528 (May 7, 1973). In view of the foregoing discussion of the Commissioner's position in this case, we have no difficulty in holding that Rev.Rul. 72–138, 1972 Int.Rev.Bull. No. 13, at 16, insofar as it embodies that position, is of no effect and force. United States v. Eddy Bros., Inc., 8 Cir., 291 F. 2d 529, 531 (1961).

cuit in Helvering v. Rebsamen Motors, Inc., 128 F.2d 584, 587–588 (1942):

"It is not our understanding that a taxing statute is only to be read literally when a literal reading favors the Government. * * *

"One may honestly and reasonably believe that in drafting a taxing act Congress uses the language which most nearly expresses the legislative intent, and that if the language used fails properly to express that intent, corrections should be made by Congressional action and not by Treasury regulations or by judicial construction. This is not to say that the language of such an act should not be accorded its full meaning or should be given an unduly restricted interpretation or one which will defeat a clearly apparent Congressional purpose. It seems to us, however, that neither the taxing authorities nor the courts are justified in virtually amending a taxing act because they are of the opinion that Congress may have had or should have had a different intention than that which was expressed in the act. There would seem to be nothing unreasonable in a rule of construction which requires legislative bodies, in enacting taxing statutes, to use language of sufficient clarity to be understood by an ordinarily intelligent taxpayer as well as by those who are required to administer and to interpret the statutes."

In sum, taxpayer's 1966 assignment to the corporation was "a transfer described in section 1235(a)." Payments received pursuant to the assignment thereby qualified for the exception from unstated interest treatment contained in § 483(f)(4). Since there is every reason to give effect to the plain language of the latter statute, the Commissioner erred in determining a deficiency in taxpayer's 1967 income tax. The United States Tax Court was correct in so holding, and we affirm its decision and order.

Affirmed.