Marcella BUSSE

v.

The UNITED STATES.

No. 224–73.

United States Court of Claims.

Oct. 20, 1976.

Robert A. Schnur, Milwaukee, Wis., atty. of record, for plaintiff. Michael, Best & Friedrich, Milwaukee, Wis., of counsel.

Kenneth R. Pike, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, Washington, D. C., for defendant. Theodore D. Peyser, Jr. and Robert S. Watkins, Washington, D. C., of counsel.

Before COWEN, Chief Judge, DURFEE, Senior Judge, and SKELTON, Judge.

OPINION

DURFEE, Senior Judge:

In this tax refund action, plaintiff, an individual taxpayer, challenges the Internal Revenue Service's [IRS or Service] determination that the imputed interest provisions of the Internal Revenue Code (26 U.S.C. § 483) apply to the the payments plaintiff received from the sale of her interest in a patent. Because of the specificity with which the Code section applies to the taxpayer, the Service must prevail on its determination.

The parties' stipulation provides the following factual backdrop to the instant controversy. In 1962, plaintiff, as widow of Gilbert Busse, inherited Gilbert's undivided one-half interest in a patent. Gilbert acquired his interest in the patent by a March 20, 1958 assignment of an undivided half-in-

terest in an invention developed by his brother, Curtis Busse, sometime prior to that date. With the issuance in August 1960 of a patent on the invention, a method and machine for stacking cans on pallets, Gilbert and Curtis Busse became equal co-owners of the patent. At the time of the patent issuance Gilbert and Curtis were engaged in the partnership business of manufacturing equipment for the can making and canning industries under the name of Busse Brothers Company.

In 1966, following Gilbert's death and plaintiff's inheritance of both Gilbert's partnership and patent interests, plaintiff and Curtis agreed to form a Wisconsin corporation, Busse Bros. Inc., and transfer their respective partnership interests together with the operating assets of the partnership to the corporation, with plaintiff and Curtis each receiving 50 percent of the new corporation's stock. Incident to this agreement plaintiff and Curtis agreed to transfer their respective interests in the can stacking patent to the corporation. In return, each were to receive five percent of the corporation's net sales (as defined by the parties' agreement) of the patented invention for the life of the patent.[1]

Under this agreement the corporation paid plaintiff $31,433.40 and $36,029.01 in 1966 and 1967 respectively. Plaintiff reported these amounts on her income tax returns for those years as long term capital gains. Upon subsequent audit the IRS, after various returns of capital adjustments, determined that of the $36,029.01 plaintiff received in 1967, $3,017.20 of that amount was unstated interest on the payment pursuant to section 483 and properly taxable as ordinary income.

In August 1970 plaintiff and the IRS entered into an Acceptance of Overassessment for tax years 1966 and 1967 with plaintiff reserving her right to pursue claims for additional refunds. In August 1971 the IRS denied plaintiff's March 1971 refund claim in the amount of $1,822.08. This action timely followed the IRS's denial of plaintiff's refund claim.

Section 483[2] of the Internal Revenue Code provides that in sales or exchanges of property where the payments are deferred for more than one year from

---

1. The parties' agreement provided that in consideration for plaintiff's patent interest the corporation agreed to pay plaintiff:

   " * * * periodic installments in the amount of 5% of Assignee's net selling price (as hereinafter defined) of palletizers and depalletizers (including parts and kits therefor) sold by assignee which are covered by any claim of said Patent * * *."

2. 26 U.S.C. § 483, Interest on Certain Deferred Payments.

   (a) *Amount constituting interest.*—For purposes of this title, in the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment to which this section applies which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract.

   (b) *Total unstated interest.*—For purposes of this section, the term "total unstated interest" means, with respect to a contract for the sale or exchange of property, an amount equal to the excess of—

   (1) the sum of the payments to which this section applies which are due under the contract, over

   (2) the sum of the present values of such payments and the present values of any interest payments due under the contract.

   For purposes of paragraph (2), the present value of a payment shall be determined, as of the date of the sale or exchange, by discounting such payment at the rate, and in the manner, provided in regulations prescribed by the Secretary or his delegate. Such regulations shall provide for discounting on the basis of 6-month brackets and shall provide that the present value of any interest payment due not more than 6 months after the date of the sale or exchange is an amount equal to 100 percent of such payment.

   (c) *Payments to which section applies.*—

   (1) *In general.*—Except as provided in subsection (f), this section shall apply to any payment on account of the sale or exchange of property which constitutes part or all of the sales price and which is due more than 6 months after the date of such sale or exchange under a contract—

   (A) under which some or all of the payments are due more than one year after the date of such sale or exchange, and

   (B) under which, using a rate provided by regulations prescribed by the Secretary or his delegate for purposes of this subparagraph, there is total unstated interest.

the date of sale, an interest element, taxable at ordinary income rates, will be imputed as part of the payment(s) if no interest is specified in the sale/exchange agreement or the stated interest is unreasonably low. 3B Mertens, Law of Federal Income Taxation §§ 22.46a, 22.46b. This general rule applies both to fixed periodic deferred payments and indefinite deferred payments made more than one year after the sale date. *C.I.R. v. Brown*, 380 U.S. 563, 578, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965). Plaintiff does not dispute that the payments she received fall within the general rule of section 483, *i. e.*, payments due more than one year after the sale of property under a contract pro-

viding for no stated interest on the deferred payments.[3] Rather, plaintiff seeks to avoid the application of section 483's imputed interest provisions to the payments she received by contending that § 483(f)(4) exempts the payments from the general rule of the section. Subsection (f)(4) insulates transactions described in section 1235(a) of the Code from the imputed interest provisions of section 483 by providing that section 483 "shall not apply to any payment made pursuant to a transfer described in section 1235(a) (relating to sale or exchange of patents."[4]

A section 1235(a)[5] transaction is one in which a patent holder transfers all substan-

Any rate prescribed for determining whether there is total unstated interest for purposes of subparagraph (B) shall be at least one percentage point lower than the rate prescribed for purposes of subsection (b)(2).

(2) *Treatment of evidence of indebtedness.* —For purposes of this section, an evidence of indebtedness of the purchaser given in consideration for the sale or exchange of property shall not be considered a payment, and any payment due under such evidence of indebtedness shall be treated as due under the contract for the sale or exchange.

(d) *Payments that are indefinite as to time, liability, or amount.*—In the case of a contract for the sale or exchange of property under which the liability for, or the amount or due date of, any portion of a payment cannot be determined at the time of the sale or exchange, this section shall be separately applied to such portion as if it (and any amount of interest attributable to such portion) were the only payments due under the contract; and such determinations of liability, amount, and due date shall be made at the time payment of such portion is made.

&ast; &ast; &ast; &ast; &ast; &ast;

(f) *Exceptions and limitations.*—

&ast; &ast; &ast; &ast; &ast; &ast;

(4) *Sales or exchanges of patents.*—This section shall not apply to any payments made pursuant to a transfer described in section 1235(a) (relating to sale or exchange of patents).

&ast; &ast; &ast; &ast; &ast; &ast;

**3.** *See* Thorington and Hardegree, *Imputed Interest—A Potential Tax Trap,* 54 A.B.A.J. 808 (1968).

**4.** See note 2, *supra*.

**5.** 26 U.S.C. § 1235. Sale or exchange of patents.

(a) *General.*—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or

(2) contingent on the productivity, use, or disposition of the property transferred.

(b) *"Holder" defined.*—For purposes of this section, the term "holder" means—

(1) any individual whose efforts created such property, or

(2) any other individual who has acquired his interest in such property in exchange for consideration in money or money's worth paid to such creator prior to actual reduction to practice of the invention covered by the patent, if such individual is neither—

(A) the employer of such creator, nor

(B) related to such creator (within the meaning of subsection (d)).

(c) *Effective date.*—This section shall be applicable with regard to any amounts received, or payments made, pursuant to a transfer described in subsection (a) in any taxable year to which this subtitle applies, regardless of the taxable year in which such transfer occurred.

(d) [as amended by Sec. 54(a), Technical Amendments Act of 1958, P.L. 85–866, 72 Stat. 1606] *Related persons.*—Subsection (a) shall not apply to any transfer, directly or indirectly, between persons specified within any one of the paragraphs of section 267(b); except that, in applying section 267(b) and (c) for purposes of this section—

(1) the phrase "25 percent or more" shall be substituted for the phrase "more than 50 per-

tial rights to a patent, or an undivided interest therein. The parties differ on whether plaintiff's sale of her patent interest was such a transaction. The parties agree that the answer to whether section 483 applies to plaintiff comes from a determination of whether section 1235(a) describes plaintiff's sale of her patent interest. We find it does not.

Section 1235(a) specifies the rule that certain transfers of patents made not by any taxpayer or patent transferor but "by any holder" shall be considered the sale or exchange of a capital asset held for more than six months. Thus the initial requirement to come within the transaction described in section 1235(a) is that the patent transferor must be a "holder." While any taxpayer can transfer a patent and be accorded the tax treatment provided under other sections of the Code, only a holder can participate in the transaction described by § 1235(a) and qualify for the section's tax treatment. All other taxpayers must look to and be aware of other Code sections for the tax treatment of their patent transfers. Treas.Reg. § 1.1235–1(b).[6]

Section 1235(b) defines a "holder" as an individual (1) who either created the invention covered by the patent or (2) who purchased an interest in the invention prior to its actual reduction to practice. Plaintiff admits that she does not fall within either of these definitions of holder. This admission of itself defeats plaintiff's claim as it has previously been observed by at least two courts that patent transferors other than holders as defined in section 1235(b) cannot participate in a transfer described in section 1235(a). *Burde v. C.I.R.,* 352 F.2d 995 (2d Cir. 1965), *cert. denied,* 383 U.S. 966, 86 S.Ct. 1271, 16 L.Ed.2d 307 (1966); *Busse*

*v. C.I.R.,* 479 F.2d 1147 (7th Cir. 1973). In *Busse* the Seventh Circuit affirmed a Tax Court decision[7] that plaintiff's brother-in-law, Curtis, was entitled under sections 483 and 1235 to treat the payments he received from the corporation for the simultaneous sale with plaintiff of his interest in the can stacking patent solely as capital gain. In that decision the court noted that the corporation, which like plaintiff received its patent rights from a holder after the invention's actual reduction to practice, could not claim the benefit of the § 483(f)(4) exemption should it subsequently transfer the patent. *Busse v. C.I.R., supra,* 479 F.2d at 1152. This view of the applicability of the (f)(4) exemption to only "holders" as defined in section 1235(b) affirms the Tax Court's position that section 483(f)(4) "exempts from the operation of the imputed-interest provisions all capital-gain-producing transfers of patents by the favored group of individuals (holders)." *Busse v. C.I.R.,* 58 T.C. 389, 396–97 (1972).

In *Burde* the Second Circuit observed that the transferee of an invention which has been reduced to actual practice cannot claim the tax benefits provided to transfers described in section 1235(a) because such transferees can never be section 1235(b) holders. Plaintiff is, by her own admission, such a transferee.

In spite of plaintiff's acknowledged inability to meet the section 1235(b) definition of "holder" and court decisions holding such as a requirement to qualify a patent transferor for participation in a transaction described in section 1235(a), plaintiff urges that because the (f)(4) exemption to section 483 applies by its terms to transfers described in section 1235(a), all other parts of section 1235, *i. e.,* § 1235(b), should be ig-

cent" each place it appears in section 267(b), and

    (2) paragraph (4) of section 267(c) shall be treated as providing that the family of an individual shall include only his spouse, ancestors, and lineal descendents.

**6.** Treas.Reg. § 1.1235–1(b)(1066) provides:

    (b) *Scope of section 1235.*

    If a transfer is not one described in paragraph (a) of this section, section 1235 shall be

disregarded in determining whether or not such transfer is the sale or exchange of a capital asset. For example, a transfer by a person other than a holder or a transfer by a holder to a related person is not governed by section 1235. The tax consequences of such transfers shall be determined under other provisions of the internal revenue laws.

**7.** *Busse v. C.I.R.,* 58 T.C. 389 (1972).

nored in determining the applicability of section 483 to the payments she received for the sale of her patent interest. Alternatively, as the term "holder" is not defined in section 1235(a), plaintiff urges the court to adopt a more comprehensive definition of the term than that specified in section 1235(b). Both of these arguments must be rejected.

■ Contrary to the taxpayer's position our reading and analysis of section 1235(a) convinces us that to come within a § 1235(a) transaction and consequently the exemption of § 483(f)(4) the taxpayer must meet the requirements of the term "holder" as that term is used in § 1235(a) and defined in § 1235(b). The term "holder" appears textually only in § 1235(a), stating the general rule that certain transfers of patents made "by any holder" shall be considered the sale or exchange of a capital asset held for more than six months. Immediately following this general rule appears the § 1235(b) Congressional instruction that "for purposes of this section, the term 'holder' means" the creator of the device covered by the patent or certain unrelated financial backers. There can be no legitimate doubt that the literal wording and structure of sections 1235(a) and (b) impose upon those taxpayers seeking the tax benefit of § 1235(a) the threshold requirement that they meet the qualifications of a § 1235(b) holder. Legitimate and knowledgeable conviction that § 1235(b) holder status stands as an indispensable part of a § 1235(a) patent transfer has long existed at both the bench and bar. *Burde v. C.I.R., supra; Busse v. C.I.R., supra; Dennis v. C.I.R.,* 473 F.2d 274 (5th Cir. 1973); *Fawick v. C.I.R.,* 436 F.2d 655 (6th Cir. 1971); *Charlson v. United States,* 525 F.2d 1046, 208 Ct.Cl. 296 (1975); 3B Mertens, Law of Federal Income Taxation, § 22.137; Greenbaum, "Tax Problems of Authors and Inventors," *Proc. NYU 13th Ann. Inst. on Fed. Taxation* 87 (1955); Kurtz, "Distinctions between License and Capital Transaction on Transfer of Patent,"

*Proc. NYU 23d Ann. Inst. on Fed. Taxation* 135 (1965); Hoffman, " 'Interest' in Deferred Payments under the Revenue Act of 1964," *Proc. NYU 23d Ann. Inst. on Fed. Taxation* 921 (1965). The preceding authorities which contain additional references supportive of the view that a taxpayer must meet the section 1235(b) definitional requirements of a "holder" in order to qualify for participation in a patent transfer described in section 1235(a) uniformly agree that:

> The provisions of Section 1235 do not apply to all taxpayers. They apply only to individuals (and not corporations) qualifying as "holders," as that term is defined in Section 1235(b).[8]

Two decades ago one knowledgeable tax commentator, anticipating this case, forecast that as heirs to investor's interests in a patent could not meet section 1235's definition of a holder they could not qualify for the tax benefits of the section. Bailey, "The Inventor," *Proc. NYU 15th Ann. Inst. on Fed. Taxation* 285, 291–92 (1957). The instant decision validates that forecast.

Plaintiff's contention that section 1235(b) must be ignored in determining whether section 1235(a) describes her transfer of the patent eschews the fundamental principle that Code sections cannot be examined *in vacuo. Hellmich v. Hellman,* 276 U.S. 233, 48 S.Ct. 244, 72 L.Ed. 544 (1928). An interpretive principle already applied to analyses of sections 1235 and 483. *Burde v. C.I.R., supra; Fox v. United States,* 510 F.2d 1330 (3d Cir. 1975).

Disregard for the definitional character of a § 1235(b) "holder" as that term is used in § 1235(a) would not only do violence to the very specific Congressional design that the section apply only to a limited group of taxpayers defined as "holders" but also render § 1235(b) meaningless. Section 1235(b) states no rule but only provides the definition of the term "holder," a term used only in the preceding section to describe the transfers to which the section applies.

---

**8.** Greenbaum, "Tax Problems of Authors and Inventors," *Proc. NYU 13th Ann. Inst. on Fed. Taxation* 87, 91 (1955).

Were we to say, as plaintiff urges, that in deciding whether a patent transfer was described by § 1235(a) that § 1235(b) must be ignored, the latter section would have no purpose. Such an argument, being obnoxious to our duty to interpret the Code as to give effect to all sections,[9] raises automatic suspicions as to the validity of plaintiff's argument. Suspicions which plaintiff has failed to quiet or explain.

Plaintiff's reliance on *Busse v. C.I.R., supra; Paxton v. C.I.R.,* 53 T.C. 202 (1969); *Goldman v. United States,* 34 AFTR2d ¶ 74–5301 (1974), which plaintiff recognizes as readily distinguishable from the instant case, provide no support for plaintiff's proposition that in determining whether section 1235(a) describes her patent transfer for purposes of deciding if the (f)(4) exemption of section 483 applies, all other parts of section 1235 must be ignored. In those cases the courts ruled not that § 1235(b) must be disregarded in determining whether a transfer meets the conditions of § 1235(a) as to come within the § 483(f)(4) exemption but that § 1235(d) can be disregarded for that purpose. Section 1235(d) states an exception to the general rule of the section by providing that transfers otherwise qualifying for tax treatment under section 1235(a) shall not be accorded that treatment if made to certain related persons. Section 1235(d) states an exception to the rule of section 1235(a) whereas section 1235(b) states a requirement to that rule. For purposes of section 483(f)(4), exceptions to section 1235(a) can rightfully be ignored, but not requirements to that section. The Seventh Circuit's acceptance of the Commissioner's view on this point disposes of plaintiff's *Busse/Paxton/Goldman* argument and renders unnecessary further elaboration. We agree with the Seventh Cir-

cuit's acceptance of the Service's position that:

" * * * Section 1235-type transactions disqualified because of an unauthorized 'transfer' would not be subject to imputed interest, but Section 1235-type transactions disqualified because of failure to meet the definition of 'holder' would be so subject. * * *."[10]

Review of the Congressional purpose behind section 1235 only serves to cement the view that unless a taxpayer initially qualifies as a "holder" as that term is defined in the section, his transfer of a patent cannot be described by the section. The legislative history of the section unequivocally evidences the intent of Congress that the section's general rule (§ 1235(a)) describe only patent transfers by a specific and limited class of transferors defined as "holders" to the exclusion of all other taxpayers. Section 1235 first entered the Code in the Revenue Act of 1954, Pub.L. 85–866, 72 Stat. 1644 in Subchapter P. Part IV, "SPECIAL RULES FOR DETERMINING CAPITAL GAINS AND LOSSES." The Senate Report[11] on the section explained that § 1235(a) provided special tax treatment to:

* * * a transfer (other than by gift, inheritance or devise) of property consisting of all substantial rights evidenced by a patent, or consisting of an undivided interest therein, *by certain holders * *.* [Emphasis added][12]

The Senate Report noted the advent of § 1235 into the Code for the purpose of alleviating uncertainty over the tax treatment of patent transfers, thus providing "incentive to inventors to contribute to the welfare of the Nation * * * [and] statutory assurance to *certain patent holders* " that their sales of patents would be accorded favorable tax treatment.[13] The same

---

**9.** *Montclair Twp. v. Ramsdell,* 107 U.S. 147, 2 S.Ct. 391, 27 L.Ed. 431 (1882); *American Bosch Magneto Corp. v. United States,* 6 F.Supp. 455, 79 Ct.Cl. 195 (1934).

**10.** *Busse v. C.I.R.,* 479 F.2d 1147, 1152 (7th Cir. 1973).

**11.** S.Rep. No. 1622, 83d Cong., 2d Sess. 438, 3 U.S.Code Cong. & Admin.News (1954), at p. 4621.

**12.** *Id.* at 438, 3 U.S.Code Cong. & Adm.News at p. 5082.

**13.** *Id.* at 439, 3 U.S.Code Cong. & Admin.News at p. 5082. [Emphasis added].

report, while admitting that the section did not define the parameters of the sale or exchange of a patent beyond requiring that all substantial rights in the patent be transferred, noted that:

> * * * This requirement recognizes the basic criteria of a "sale or exchange" under existing law, with the exception noted relating to contingent payments, which exception is justified in the patent area for "holders" as herein defined.
>
> * * * * * *
>
> Subsection (b) specifies the categories of taxpayers who are entitled to the benefits of this section. It is limited to individuals. A "holder" is defined as any individual whose efforts created the patent property transferred, by which is meant the "first and original" inventor (or joint inventor) within the meaning of section 31 of title 35 of the United States Code. Individuals not eligible to qualify as such "first and original" inventor will not qualify under this definition: for example, the inventor's employer may not here qualify, even though he may be the equitable owner of the patent by virtue of an employment relationship with the inventor. However, your committee is desirous of extending the scope of this section to cover (in addition to inventors) those individuals who contribute financially toward the development of the invention. Accordingly, paragraph (2) of subsection (b) also includes within the definition of "holder" any other individual who acquired his interest in such property in exchange for consideration in money or money's worth (i. e., consideration capable of present valuation in monetary terms) actually paid to the creator prior to the time when the invention (to which the patent rights relate) is actually reduced to practice (as compared to "constructive" reduction to practice). This paragraph does not include any individual who is either an employer of any creator or related to any such creator within the meaning of subsection (d); however, the section does apply to all qualifying individuals, whether amateur or professional, regardless of how often they may have sold their patents. *The section is not applicable to any other purchasers or assignees.* [Emphasis added].[14]

The concluding paragraph of the Senate Report on section 1235 sounded the death knell for plaintiff's argument that section 1235(a) described her patent transfer:

> It is the intention of your committee that, if the mode of payment is as described in subsection (a), the sale of a patent by any "holder" must qualify under the section in order for such "holder" to obtain capital gain treatment. However, the benefits of this section are to be limited to those individuals and transfers qualifying under its terms. In enacting this section, for the specific purposes set forth in this report, your committee has no intention of affecting the operation of existing law in those areas without its scope. For example, the tax consequences of the sale of patents in years to which this section is inapplicable, or by individuals who fail to qualify as "holders,' or by corporations, is to be governed by the provisions of existing law as if this section had not been enacted. * * *.[15]

■ At the heart of plaintiff's claim lies her enmity at having to treat the payments she received for the sale of her patent interest partially as imputed interest taxable as ordinary income and partially as capital gain while her brother-in-law may treat all of the payments for his half interest in the same patent, sold at the same time to the same buyer for the same price solely as capital gain. *Busse v. C.I.R., supra.* While plaintiff characterizes this result as unjustified and irrational, we cannot say after a review of the section's language, legislative history and reputable tax treatises that Congress with good reason did not intend the instant result of treating transferors of patents differently depending on their "holder" status.

---

**14.** *Id.* at 439–40, 3 U.S.Code Cong. & Admin. News at pp. 5083–084.

**15.** *Id.* at 441, 3 U.S.Code Cong. & Admin.News at p. 5084.

Judge Hastings in the Seventh Circuit's *Busse* decision provided the succinct answer to attacks on the equity of applying Code provisions as written and intended by Congress even though they may result in dissimilar treatment of taxpayers:

> However much the statute, in operation, may offend the [taxpayer's] sense of symmetry and propriety, we cannot say that the results it causes are either absurd or unintended by Congress. Courts have no power * * * "to rewrite legislative enactments to give effect to" their "ideas of policy and fitness or the desirability of symmetry in statutes." *United States v. Shirah*, 4 Cir., 253 F.2d 798, 800 (1958). The powers of repeal and amendment are uniquely legislative in their nature. * * *[16]

To escape the imputed interest provisions of section 483 on payments subject to that section resulting from a taxpayer's transfer of a patent, the Code specifically dictates that the transfer must be one described in section 1235(a). With equal specificity section 1235(a) requires that the patent transferor must be a "holder" which, for purposes of that section, is defined by section 1235(b). Since plaintiff cannot qualify as a holder under section 1235(b) her patent transfer cannot be deemed one described in section 1235(a) and accordingly, plaintiff cannot escape section 483 imputed interest on the payments received for her transfer of the patent. Judicial decisions, the legislative history, and several comprehensive analyses of section 1235(a) unanimously support this view, and plaintiff's briefs and our own research have uncovered nothing to the contrary.

Accordingly, plaintiff is not entitled to recover and her petition is dismissed.

---

**16.** *Busse v. C.I.R.*, 479 F.2d 1147, 1152 (7th Cir. 1973).