RANSBURG CORPORATION AND SUBSIDIARIES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4569–77.    Filed May 9, 1979.

*Robert J. Cunningham* and *James T. Hitch III*, for the petitioners.

*Richard E. Trogolo*, for the respondent.

OPINION

DAWSON, *Judge:* Respondent determined deficiencies in petitioners' Federal income taxes as follows:

| TYE Nov. 30— | Deficiency | TYE Nov. 30— | Deficiency |
| --- | --- | --- | --- |
| 1966 | $7,363.70 | 1969 | $84,178.00 |
| 1967 | 40,699.32 | 1970 | 66,604.00 |
| 1968 | 53,879.13 | 1972 | 92,453.00 |

The parties have settled or conceded certain issues. The only issue remaining for our decision is whether the annual payments received by Ransburg Corp. during 1966 through 1970 and 1972, as a result of its sale of patents to Ransburg Japan Ltd. in 1963, are excepted pursuant to section 483(f)(4)[1] from the unstated interest provisions of section 483(a).

The facts are fully stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The pertinent facts are summarized below.

Ransburg Corp. (formerly Ransburg Electro Coating Corp., and referred to herein as petitioner) is a corporation organized and existing under the laws of the State of Indiana. Petitioner's principal corporate offices at the time it filed its petition in this case were located in Indianapolis, Ind. Petitioner filed its Federal income tax returns for the taxable years ended Novem-

---

[1]Unless specified otherwise, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue.

ber 30, 1966, 1967, 1968, 1969, 1970, and 1972 (hereinafter referred to as 1966, 1967, 1968, 1969, 1970, and 1972, respectively), with the Internal Revenue Service Center at Memphis, Tenn.

From 1952 through August 5, 1963, petitioner's efforts to market its products in Japan had not been successful. As a consequence, none of its equipment had been offered for sale in Japan and petitioner had made no commercial use of its Japanese trademarks in Japan. Petitioner had filed, however, a number of patent and utility model applications in Japan on the basis of United States patents held by petitioner and of patent applications previously filed in the United States. As of August 5, 1963, petitioner was the owner of a number of Japanese patents. Many Japanese manufacturing companies wanted to use or acquire petitioner's Japanese patents and patent and utility model applications.

On April 14, 1963, petitioner entered into an agreement (hereinafter the April agreement) with Fuso Power & Heat Industrial Co., Ltd. (hereinafter Fuso), a Japanese corporation with its principal place of business in Tokyo, Japan. In the April agreement, petitioner and Fuso agreed to establish a joint venture company in Japan for the manufacture, assembly, sale, and marketing of petitioner's electrostatic coating processes and equipment in Japan.

Pursuant to the April agreement, petitioner organized on April 18, 1963, a Japanese corporation, Ransburg Japan Ltd. (hereinafter Ransburg Japan), with an initial paid-in capitalization of 1 million yen (hereinafter referred to as Y) and 1,000 issued shares of capital stock with no par value. All of the shares of the Ransburg Japan stock were initially owned by petitioner.

On July 15, 1963, Fuso acquired 1,000 shares of newly issued stock of Ransburg Japan for Y250 million. After this payment by Fuso to Ransburg Japan, the necessary Japanese legal procedures were commenced to effect its issuance of 1,000 new shares of stock to Fuso. Also on July 15, 1963, Fuso acquired 20 shares of the Ransburg Japan stock from petitioner for Y2,510,000. Accordingly, Fuso held 51 percent of the Ransburg Japan stock on July 15, 1963. The remaining 49 percent was held by petitioner.

Petitioner entered into a patent sale agreement dated August 5, 1963 (hereinafter patent sale agreement), with Ransburg Japan and sold, assigned, and transferred to Ransburg Japan all

rights to its Japanese patents, patent and utility model applications, and trademarks (hereinafter collectively referred to as Japanese patents) relating to electrostatic coating processes and equipment. The patent sale agreement became effective on August 5, 1963, when the initial payment under the patent sale agreement of Y200 million was made by Ransburg Japan to petitioner. Following the execution of the patent sale agreement, petitioner notified the Japanese patent office that it had assigned and transferred its Japanese patents to Ransburg Japan.

Petitioner's Japanese patents were capital assets which petitioner had held for more than 6 months as of August 5, 1963.

The patent sale agreement resulted in petitioner's sale or exchange of its Japanese patents for a total purchase price of Y3,500 million consisting of the initial payment of Y200 million and annual payments thereafter until the total purchase price had been paid.

Subsequently, petitioner and Ransburg Japan entered into an agreement dated October 30, 1965, which amended the patent sale agreement to reduce the total purchase price of Y3,500 million to Y1,850 million.

Petitioner received annual payments from Ransburg Japan relating to the sale of its Japanese patents under the amended patent sale agreement, as follows:

| TYE Nov. 30— | Amount collected in yen | Dollar value of yen received |
|---|---|---|
| 1963 | Y200,000,000 | $500,000 |
| 1964 | 3,500,717 | 6,612 |
| 1965 | 21,874,587 | 60,613 |
| 1966 | 73,053,218 | 201,695 |
| 1967 | 189,215,343 | 522,411 |
| 1968 | 323,447,688 | 893,825 |
| 1969 | 430,194,461 | 1,202,998 |
| 1970 | 364,776,221 | 1,019,640 |
| 1971 | 157,317,999 | 482,909 |
| 1972 | 86,619,766 | 287,974 |
| | 1,850,000,000 | 5,178,677 |

The patent sale agreement, as amended, did not provide for interest on any of the annual payments.

Petitioner reported all of the payments received from Rans-

burg Japan as long-term capital gain in its Federal income tax returns for 1966 through 1970 and 1972. Respondent recharacterized a portion of those payments as interest. The amounts as reported by petitioner and recharacterized by respondent are as follows:

| TYE Nov. 30— | Payments reported by petitioner as long-term capital gain | Portion of the payments recharacterized by respondent as interest |
|---|---|---|
| 1966 | $201,695 | $32,015 |
| 1967 | 522,411 | 104,101 |
| 1968 | 893,825 | 212,605 |
| 1969 | 1,202,998 | 330,319 |
| 1970 | 1,019,640 | 315,609 |
| 1972 | 287,974 | 107,838 |

This is a case of first impression for this Court. We are asked to decide whether a corporate patent owner who secures capital treatment on the sale of its patent rights may avoid the imputation of interest on its deferred payment contract by application of the exception in section 483(f)(4). Specifically, the issue is whether a corporate patent owner can meet the requirements of section 483(f)(4) which provides that transfers (of patents) "described in section 1235(a)" are exempt from imputation of interest under section 483(a).

Section 1235(a) provides in pertinent part:[2]

SEC. 1235 (a). GENERAL.—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than six months, regardless of whether or not payments in consideration of such transfer are—

(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or

(2) contingent on the productivity, use, or disposition of the property transferred.

Section 1235 was enacted as part of the 1954 Code to provide that certain individuals would receive capital treatment on the

---

[2]Sec. 1235(a) was amended by sec. 1402(b)(1)(V), Tax Reform Act of 1976, Pub. L. 94–455, by substituting 9 months for 6 months, effective for taxable years beginning in 1977.

sale of their patent rights regardless of the form in which payment was received. This provision was deemed necessary because of prior statements by the Commissioner that he would regard assignments or licenses of patents as providing for the payment of royalties taxable as ordinary income if payment was measured by the production, sale, or use of the property transferred, or if it was payable periodically over a period coterminous with the transferees' use of the patent. Mim. 6490, 1950–1 C.B. 9; S. Rept. 1622, 83d Cong., 2d Sess. 439 (1954).

To secure the benefits under section 1235(a), however, it is necessary that the patent owner be within the definition of "holder" set out in section 1235(b). That provision provides that a holder, for purposes of section 1235(a), is limited to the following individuals:

(1) any individual whose efforts created such property, or

(2) any other individual who has acquired his interest in such property in exchange for consideration in money or money's worth paid to such creator prior to actual reduction to practice of the invention covered by the patent, if such individual is neither—

(A) the employer of such creator, nor

(B) related to such creator * * *

Congress also provided that transfers by holders as defined in section 1235(b) to certain related persons enumerated in section 1235(d)[8] will not qualify under section 1235(a) for capital gain treatment.

Section 1235 did not limit a patent owner who did not qualify as a holder under section 1235(b) or who qualified as a holder but engaged in a prohibited section 1235(d) transfer from securing capital treatment. In those situations the judicially developed rules regarding whether the transfer of patent rights constituted a sale or exchange remained operative.

Ten years later Congress enacted section 483, which provides that if property is sold for payments, part or all of which are due more than 1 year after the date of the sale, and if no interest

---

[8]Sec. 1235(d) provides:

Subsection (a) shall not apply to any transfer, directly or indirectly, between persons specified within any one of the paragraphs of section 267(b); except that, in applying section 267(b) and (c) for purposes of this section—

(1) the phrase "25 percent or more" shall be substituted for the phrase "more than 50 percent" each place it appears in section 267(b), and

(2) paragraph (4) of section 267(c) shall be treated as providing that the family of an individual shall include only his spouse, ancestors, and lineal descendants.

payments are required or if the specified interest rate is to be computed at an unreasonably low rate, then part of each payment shall be treated as interest. Prior to the enactment of section 483, a taxpayer could sell a capital asset on the installment basis without providing for any interest payments. In such a sale, the difference between the cost or other basis for the property and the sales price was usually treated as capital gain. Thus, the parties could, by the wording of the sales agreement, partially determine the character of the income received from a sale. Congress believed that "manipulation of the tax laws in such a manner * * * [was] undesirable" and recommended "corrective action" in the form of section 483. H. Rept. 749, 88th Cong., 1st Sess. 72–74 (1963); S. Rept. 830, 88th Cong., 2d Sess. 101–103 (1964). Certain exceptions to this imputed interest rule were provided by Congress in section 483(f). Section 483(f)(4) excepts transfers "described in section 1235(a) (relating to sale or exchange of patents)" from the operation of section 483(a). In the committee reports it was stated that "this provision [was] not to apply in the case of payments with respect to patents, which are treated as capital gain under present law." H. Rept. 749, 88th Cong., 1st Sess. 74 (1963); S. Rept. 830, 88th Cong., 2d Sess. 101–103 (1964).

A number of cases have subsequently interpreted the interplay between sections 483 and 1235. In *Paxton v. Commissioner*, 53 T.C. 202 (1969), we held that an individual who transferred a patent and obtained capital gain treatment was entitled to the section 483(f)(4) exception notwithstanding his failure to qualify under section 1235(a). The taxpayer, although a holder within the meaning of section 1235(b), had transferred his patent rights to a prohibited party as defined in section 1235(d). In our view, section 483(f)(4) merely required that the transfer be "described" in section 1235(a) and, therefore, qualification under section 1235 was not a prerequisite to section 483(f)(4) availability.

In *Busse v. Commissioner*, 58 T.C. 389 (1972), we reconsidered our initial position in *Paxton* and again held that qualification under section 1235(a) was not a prerequisite to section 483(f)(4) treatment. In *Busse* the taxpayer was a holder, as defined in section 1235(b), who transferred a patent interest to an impermissible section 1235(d) related party. We stated:

Admittedly, not all sales made by holders of patents are governed by section 1235. Sec. 1.1235–1(b), Income Tax Regs. Certain sales, such as the one in the

instant case, are excluded from the application of that section by section 1235(d), relating to transfers between related persons, and are controlled by other provisions of the Code. However, we find nothing in the legislative policy underlying section 1235(d) which indicates that such sales by holders were not intended to fall within the subsection 483(f)(4) exception.

Subsection (d) was included in section 1235 in order to forestall possible abuses of the favorable treatment afforded by that section to sales of patents. It excludes from the operation of section 1235 sales of patents "within essentially the same economic group." * * * Significantly, subsection (d) does not achieve its objective, as argued by respondent, by *defining* the term "transfer"; rather, it provides that subsection (a) "shall not apply" to certain types of transfers. The result is that subsection (d) limits the application of section 1235 but does not restrict the scope of the definitional or descriptive provisions found in subsections (a) and (b). * * *

Moreover, the benefits conferred by sections 483(f)(4) and 1235 are different, and we do not think it unreasonable that the transactions to which those benefits are extended may differ. Section 1235 was intended to clarify and, in certain cases, extend the area in which capital gain treatment may be obtained on transfers of patents. However, as noted above, to avoid expanding the area in which such transfers within the same economic group are entitled to capital gain treatment, Congress adopted the exclusionary provisions of subsection (d). Respondent concedes that by excluding from the operation of section 1235 transfers to related persons, Congress did not preclude them from receiving capital gain treatment. In the words of the regulation, "The tax consequences of such transfers shall be determined under other provisions of the internal revenue laws." Sec. 1.1235–1(b), Income Tax Regs.

Section 483(f)(4), on the other hand, does not involve a question of expanding favorable tax treatment in cases of transfers within an economic group. Rather, it exempts from the operation of the imputed-interest provisions all capital-gain-producing transfers of patents by the favored group of individuals (holders). We can conceive of no legislative policy reason why patent transfers by holders to related persons which are taxed in the same manner as other patent transfers by holders should be treated differently for purposes of section 483(f)(4). Certainly, there are no reasons which are so obvious as to warrant our disregard of the plain language of section 483(f)(4) and the regulations issued thereunder. [58 T.C. at 395–397.]

On appeal, the Seventh Circuit affirmed. 479 F.2d 1147 (7th Cir. 1973). The Court of Appeals reviewed the legislative histories of sections 483 and 1235 and agreed with our view that qualification under section 1235 was not necessary in order to obtain section 483(f)(4) benefits. As a basis for reversing our opinion, the Commissioner had argued that disparate tax treatment would result if "section 1235 type transactions disqualified because of an unauthorized transfer would not be subject to imputed interest but section 1235 type transactions

disqualified because of a failure to meet the definition of 'holder' would be so subject." Nevertheless, the Court of Appeals said that: "However much the statute, in operation, may offend the Commissioner's sense of symmetry and propriety, we cannot say that the results it causes are either absurd or unintended by Congress." (479 F.2d at 1152.)

In *Goldman v. United States*, 34 AFTR 2d 74–6019 (1974), 74–2 USTC par. 9723, the District Court for the Eastern District of Louisiana held that a transfer of certain patent rights which did not qualify for capital gain treatment under section 1235(a) but did qualify for capital treatment under the general sale and exchange provisions was within the section 483(f)(4) exception. As in the prior Tax Court cases, *Goldman* concerned the transfer of patent rights by an undisputed 1235(b) holder. Unlike our opinion in *Busse v. Commissioner*, 58 T.C. 389 (1972), where we indicated that section 483(f)(4) treatment would be available only to patent owners who were holders under section 1235(b) (and therefore described in 1235(a)), the District Court indicated that all receipts from the sale of patent rights are exempt from the—

interest-imputation provisions because of [section] 483(f)(4) and [section] 1235(a)'s broad phrasing. *Some* are also entitled to capital gain treatment, by virtue of [section] 1235 and other sections of the Code. But the two determinations are not interdependent. [34 AFTR 2d at 6020, 74–2 USTC par. 9723.]

The issue of whether a patent owner who was not a section 1235(b) "holder" could qualify for the section 483(f)(4) exception has been specifically considered by the Court of Claims and a District Court. In *Busse v. United States*, 211 Ct. Cl. 247, 543 F.2d 1321 (1976), the taxpayer-transferor had neither created the invention covered by the patent nor purchased an interest in the invention prior to its actual reduction to practice and, consequently, was not a "holder" as defined in section 1235(b). In that case, the taxpayer contended that since the section 483(f)(4) exception applied by its terms to transfers "described in section 1235(a)," all other parts of section 1235, including subsection (b), should be ignored in determining the applicability of section 483 to the payments received on the sale of her interest. The Court of Claims, however, rejected that argument, stating:

Contrary to the taxpayer's position our reading and analysis of section 1235(a) convinces us that to come within a §1234(a) transaction and consequently the exemption of §483(f)(4) the taxpayer must meet the requirements

of the term "holder" as that term is used in §1235(a) and defined in §1235(b). The term "holder" appears textually only in §1235(a), stating the general rule that certain transfers of patents made "by any holder" shall be considered the sale or exchange of a capital asset held for more than six months. Immediately following this general rule appears the §1235(b) Congressional instruction that "for purposes of this section, the term 'holder' means" the creator of the device covered by the patent or certain unrelated financial backers. There can be no legitimate doubt that the literal wording and structure of sections 1235(a) and (b) impose upon those taxpayers seeking the tax benefit of §1235(a) the threshold requirement that they meet the qualifications of a §1235(b) holder. Legitimate and knowledgeable conviction that §1235(b) holder status stands as an indispensable part of a §1235(a) patent transfer has long existed at both the bench and bar. * * *

          *         *         *         *         *         *         *

Plaintiff's contention that section 1235(b) must be ignored in determining whether section 1235(a) describes her transfer of the patent eschews the fundamental principle that Code sections cannot be examined *in vacuo*. *Hellmich v. Hellman*, 276 U.S. 233, 48 S.Ct. 244, 72 L. Ed. 544 (1928). * * *

Disregard for the definitional character of a §1235(b) "holder" as that term is used in §1235(a) would not only do violence to the very specific Congressional design that the section apply only to a limited group of taxpayers defined as "holders" but also render §1235(b) meaningless. Section 1235(b) states no rule but only provides the definition of the term "holder," a term used only in the preceding section to describe the transfers to which the section applies. * * *

Plaintiff's reliance on *Busse v. C.I.R., supra; Paxton v. C.I.R.*, 53 T.C. 202 (1969); *Goldman v. United States*, 34 AFTR 2d ¶74–5301 (1974), which plaintiff recognizes as readily distinguishable from the instant case, provide no support for plaintiff's proposition that in determining whether section 1235(a) describes her patent transfer for purposes of deciding if the (f)(4) exemption of section 483 applies, all other parts of section 1235 must be ignored. In those cases the courts ruled not that §1235(b) must be disregarded in determining whether a transfer meets the conditions of §1235(a) as to come within the §483(f)(4) exemption but that §1235(d) can be disregarded for that purpose. Section 1235(d) states an exception to the general rule of the section by providing that transfers otherwise qualifying for tax treatment under section 1235(a) shall not be accorded that treatment if made to certain related persons. Section 1235(d) states an exception to the rule of section 1235(a) whereas section 1235(b) states a requirement to that rule. For purposes of section 483(f)(4), exceptions to section 1235(a) can rightfully be ignored, but not requirements to that section. * * * [543 F.2d at 1325–1326.]

The view expressed by the Court of Claims was recently followed by the United States District Court for the Eastern District of Wisconsin in *Busse v. United States*, 437 F. Supp. 928 (1977).

Petitioner contends that it qualifies for section 483(f)(4) notwithstanding its failure to qualify as a holder under section

1235(b). It asserts that the legislative history behind section 483 and principles of statutory construction provide arguable support that a "transfer described in section 1235(a)" need not be by a "holder" as defined in section 1235(b) to qualify for section 483(f)(4) treatment. It strongly argues that the courts in *Busse v. United States*, 437 F. Supp. 928 (E.D. Wis. 1977), and *Busse v. United States*, 211 Ct. Cl. 247, 543 F.2d 1321 (1976), have erroneously interpreted the requirement that a taxpayer be a "holder" within section 1235(b) to obtain section 483(f)(4) treatment. Petitioner instead relies on *Goldman v. United States*, an unreported case (E.D. La. 1974, 34 AFTR 2d 74–6019, 74–2 USTC par. 9723), and our opinion in *Paxton v. Commissioner*, 53 T.C. 202 (1969). Finally, petitioner maintains that section 1.483–2(b)(4), Income Tax Regs., has improperly interpreted section 483(f)(4).

Respondent, on the other hand, contends that for petitioner's sale to be a "transfer described in section 1235(a)" it is necessary that petitioner meet the definitional standard of "holder" found in section 1235(b). Respondent cites as direct authority for this proposition *Busse v. United States*, 211 Ct. Cl. 247, 543 F.2d 1321 (1976); *Busse v. United States*, 437 F. Supp. 928 (E.D. Wis. 1977); and *Busse v. Commissioner*, 58 T.C. 389 (1972), affd. 479 F.2d 1147 (7th Cir. 1973). Respondent also maintains that the legislative history accompanying the enactment of section 483 does not provide petitioner with any support for its position. Finally, respondent asserts that section 1.483–2(b)(4), Income Tax Regs., properly and validly interprets section 483(f)(4).

Having considered both the legislative histories and policies behind sections 483 and 1235 and the subsequent judicial development and interpretation of these provisions, we agree with respondent that petitioner is not entitled to section 483(f)(4) treatment. We reject petitioner's first argument that the transfer of its patent rights is factually a "transfer described in section 1235(a)." Petitioner believes that Congress, by limiting the cross reference in section 483(f)(4) to section 1235(a) only, meant to exclude the definition of holder that appears in section 1235(b) from the term "by any holder" appearing in section 1235(a). Section 483(f)(4) clearly requires that to obtain the interest exception, the transfer must be one described in section 1235(a). Section 1235(a) requires a transfer by any holder, a term defined in section 1235(b), to include *certain individuals*.

Petitioner, a corporation, is not a holder described in section 1235(b) and therefore cannot be factually described as a holder described in section 1235(a) transferring certain patent rights. Thus, petitioner's argument that respondent misconstrues "description" under section 1235(a) for "qualification" under section 1235(a) is erroneous. It is not necessary that petitioner qualify under section 1235 as a whole to obtain the benefits of section 484(f)(4). *Busse v. Commissioner*, 58 T.C. 389, 392–394 (1972), affd. 479 F.2d 1147 (7th Cir. 1973); *Paxton v. Commissioner*, 53 T.C. 202, 206 (1969). We agree with the interpretation by the Court of Claims and the District Court for the Eastern District of Wisconsin that section 1235(b) is a necessary part of any transfer "described in section 1235(a)." We also think that our language in *Busse v. Commissioner*, 58 T.C. 389, 394–395 (1972), affd. 479 F.2d 1147 (7th Cir. 1973), supports such a result.

Petitioner's reliance on *Goldman v. United States*, an unreported case (E.D. La. 1974, 34 AFTR 2d 74–6019, 74–2 USTC par. 9723), and *Paxton v. Commissioner*, 53 T.C. 202 (1969), is misplaced. Both cases dealt with a transfer of patent rights by a section 1235(b) holder to an impermissible section 1235(d) party. As noted earlier, both cases held that section 483(f)(4) applied when payments were made pursuant to a transfer described in section 1235(a), even though section 1235(a) was made inapplicable because of section 1235(d). Neither case addressed the specific issue presented here. We do not agree with the District Court in *Goldman* that section 483(f)(4) should have applicability whenever capital gain on the sale of a patent occurs.

Petitioner also relies on a selected reading of the legislative history relating to section 483. It cites part of the House and Senate committee reports which would ostensibly support a broad application of section 483(f)(4) wherever capital gain resulted on a patent transfer. However, the technical provisions of the committee reports do not suggest such a broad application. H. Rept. 749, 88th Cong., 1st Sess. A87 (1963); S. Rept. 830, 88th Cong., 2d Sess. 245 (1964). In this regard, we have previously held that "the incorporation of section 1235(a) into section 483(f)(4) merely extends the legislative policy of encouraging the inventive work of such persons [sec. 1235(b) holders]." *Busse v. Commissioner*, 58 T.C. 389, 395 (1972).

We find unpersuasive the petitioner's argument that the parenthetical phrase with respect to the sale or exchange of

patents appearing in section 483(f)(4) indicates congressional intent to broadly apply that provision. If Congress had intended to apply section 483(f)(4) to any patent transfer by any person in which capital gain treatment resulted, the reference to section 1235(a) would have been unnecessary. It is our view that the parenthetical phrase serves no purpose other than to identify the nature and purpose of section 1235(a).

Finally, petitioner's argument that section 1.483–2(b)(4), Income Tax Regs., is invalid is without merit. That section provides:

> *Sales or exchanges of patents.* Section 483 does not apply to any payments made pursuant to a transfer described in section 1235(a) (relating to sale or exchange of patents). The preceding sentence does not apply to transfers which are not described in section 1235(a) but which receive capital gain treatment under another section of the Code.

It is readily apparent that the first sentence of the regulation is nothing more than a repetition of the statutory language. The second sentence is applicable to the instant case, i.e., the transfer is not described in section 1235(a) and therefore the petitioner is not entitled to section 483(f)(4) treatment. In our judgment, the regulation correctly interprets the meaning and purpose of the statute.

Accordingly, we hold that the petitioner, a corporate transferor, is not entitled to the benefits of the unstated interest exception of section 483(f)(4) with respect to the payments it received from the sale of its patents. It therefore follows that the respondent correctly determined that a portion of the payments received by petitioner from the sale of its patents constituted unstated interest under the provisions of section 483(a).

To reflect the concessions made by the parties, and our conclusion on the disputed issue,

*Decision will be entered under Rule 155.*