FLOYD G. PAXTON AND GRACE D. PAXTON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5537–68.  Filed November 10, 1969.

*Peter M. Lind*, for the petitioners.
*Lee A. Kamp*, for the respondent.

### OPINION

SCOTT, *Judge:* Respondent determined deficiencies in petitioners' income taxes for the calendar years 1965 and 1966 in the amounts of $851.32 and $2,880.25, respectively.

The only issue for decision is whether a portion of the payments received by petitioners during the years 1965 and 1966 under a license agreement whereby they disposed of substantially all rights in certain patents was unstated interest under the provisions of section 483, I.R.C. 1954.[1]

All of the facts have been stipulated and are found accordingly.

Petitioners at the time of the filing of the petition in this case resided at Yakima, Wash. They filed their joint Federal income tax returns for the calendar years 1965 and 1966 with the district director of internal revenue at Tacoma, Wash.

On March 19, 1961, Floyd G. Paxton (hereinafter referred to as petitioner) applied for a patent pertaining to an apparatus for making bag closures united in strip form and dispensing individual bag closures. An additional patent was also applied for by petitioner for bag closures united in strip form on polyethylene multiple-closure strips adapted to separation into individual closures.

On January 5, 1965, patents were issued to petitioner for these bag-closure dispensing apparatuses.

Sometime prior to January 1, 1965, Kwik Lok Corp. was organized under the laws of the State of Washington for the purpose of manufacturing and selling Kwik Lok bag-closure apparatus. As of January 1, the capital structure of Kwik Lok Corp. consisted of 500 shares of class A voting stock and 1,471 shares of class B nonvoting stock, all of which was owned by petitioner.

Petitioner subsequent to January 1, 1965, made gifts of some of his stock to his children and a key employee so that as of April 1,

---

[1] All references are to the Internal Revenue Code of 1954.

1965, he owned 395 shares of class A stock out of the total outstanding stock of 500 shares and 1,140 shares of the class B stock out of total outstanding stock of 1,471 shares.

On April 30, 1965, petitioner, as licensor, entered into an agreement with Kwik Lok Corp. with respect to the transfer of his patents to that corporation. This agreement recited that the licensor was the inventor and sole owner of certain inventions and patents issued to him on those inventions and that the licensee was desirous of receiving an exclusive license from the licensor to employ in the licensee's business the methods covered by the licensor's patents and "to manufacture, use, lease and/or sell the products covered thereby, and to manufacture, use, lease and/or sell all improvements heretofore or hereafter invented by Licensor and embraced by any of the claims of said patents." The agreement then contained a grant by the licensor to the licensee of an exclusive license under the licensor's patents for the entire territory of the United States, embracing the rights to perform the methods covered by the patents; to manufacture, use, lease, and sell devices covered by the patents including devices embodying any improvements invented by the licensor; and to grant to other parties nonexclusive sublicenses to manufacture, use, lease, and/or sell devices covered by the patents. The agreement provided that in the event it had not been terminated in accordance with the express provisions therein for termination, the term of the agreement should extend from the date of its execution to January 5, 1982, the date of the expiration of the patents, or should it apply to patented improvements, to the date of expiration of the last such improvement patent to issue. The special provisions with regard to termination granted to the licensee the right of termination by giving advanced written notice to the licensor of its intention to do so 90 days before the proposed termination date and paying to the licensor on or before the date of termination, all royalties and other sums due under the agreement and unpaid. The licensor could not terminate the agreement except for default by the licensee or the bankruptcy of the licensee. The following provision was contained in agreement with respect to royalties:

3. ROYALTY. During the term of this agreement, LICENSEE shall pay LICENSOR cash royalties as follows:

7½% (seven one-half per cent) on the first $1,000,000.00 (one million dollars) of net sales by LICENSEE and its Sublicensees of devices covered by one or more of said patents during each calendar year, the first of which years is to start on May 1, 1965, and conclude April 30, 1966.

6% (six per cent) on the second $1,000,000.00 (one million dollars) of such net sales during said calendar year.

5% (five per cent) on all such net sales in excess of $2,000,000.00 (two million dollars) during said calendar year.

Pursuant to the license agreement Kwik Lok Corp. paid to petitioner during the calendar years 1965 and 1966 the amounts of $37,878.19 and $96,154.48, respectively.

Petitioners on their Federal income tax returns for the calendar years 1965 and 1966 treated the total payments which they received from Kwik Lok Corp. as long-term capital gain.

Respondent in his notice of deficiency determined that the payments made to petitioner by Kwik Lok Corp. in 1965 and 1966 to the extent of $2,694.52 and $10,286.58, respectively, represented unstated interest within the meaning of section 483. Respondent therefore increased the ordinary income of petitioners by the amount determined to represent such unstated interest and decreased capital gain reported by petitioners by 50 percent of those amounts or $1,347.26 for 1965 and $5,143.29 for 1966.

The parties agree that if the provisions of section 483 with respect to unstated interest are applicable to the payments petitioner received under his license agreement with Kwik Lok Corp., respondent's computation of the amounts of such interest is correct.

It is petitioner's position that the agreement with respect to which he received the royalty payments is specifically exempt from the provisions of section 483.[2] Petitioner recognizes that his entitlement to treat royalties as capital gains is not under the provisions of section 1235(a). Section 1235(d)[3] specifically provides that subsection (a)

---

[2] SEC. 483. INTEREST ON CERTAIN DEFERRED PAYMENTS.

(a) AMOUNT CONSTITUTING INTEREST.—For purposes of this title, in the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment to which this section applies which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract.

\* \* \* \* \* \* \*

(f) EXCEPTIONS AND LIMITATIONS.—

\* \* \* \* \* \* \*

(4) SALES OR EXCHANGES OF PATENTS.—This section shall not apply to any payments made pursuant to a transfer described in section 1235(a) (relating to sale or exchange of patents)

[3] SEC. 1235. SALE OR EXCHANGE OF PATENTS.

(a) GENERAL.—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or

(2) contingent on the productivity, use or disposition of the property transferred.

(b) "HOLDER" DEFINED.—For purposes of this section, the term "holder" means—

(1) any individual whose efforts created such property or

\* \* \* \* \* \* \*

(d) RELATED PERSONS.—Subsection (a) shall not apply to any transfer, directly or indirectly, between persons specified within any one of the paragraphs of section 267(b); except that, in applying section 267 (b) and (c) for purposes of this section—

(1) the phrase "25 percent or more" shall be substituted for the phrase "more than 50 percent" each place it appears in section 267(b), and

(2) paragraph (4) of section 267(c) shall be treated as providing that the family of an individual shall include only his spouse, ancestors, and lineal descendants.

of section 1235 "shall not apply to any transfer, directly or indirectly, between persons specified within any one of the paragraphs of section 267(b)." Petitioner's transfer to Kwik Lok Corp. in which he owned a controlling interest was a transfer to a person specified in section 267(b). Petitioner's position is simply that the limitation provided for in section 483(a) is not to payments made pursuant to a transfer which comes within the provision of section 1235(a), but rather is to a transfer "described in section 1235(a)." Petitioner says that even though his transfer of his patents to Kwik Lok Corp. does not fall within section 1235(a), this transfer is nevertheless a transfer "described in" that section. Petitioner points out that all substantial rights to the patents were transferred by the holder as the term "holder" is defined in section 1235.

Petitioner further states that respondent's regulations support his contention in that section 1.483–2(b)(4) [4] with respect to sales or exchange of patents states, as does the statute, that section 483 does not apply to any payment made pursuant to a transfer "described in section 1235(a) (relating to sale or exchange of patents)." He says even though the regulation further contains a provision that the sentence does not apply to transfers which "are not described in section 1235(a) but which receive capital gain treatment under another section of the Code," that this provision is not applicable to him because his transfer is "described in section 1235(a)."

Respondent argues that the provision of section 1.1235–1(b) Income Tax Regs.,[5] providing that if a transaction is not one described in paragraph (a), section 1235 shall be disregarded in determining whether or not the transfer is a sale or exchange of a capital asset, and the tax consequences of such a transfer shall be determined under other provisions of the internal revenue laws, shows that section 483 was intended to apply to any transaction which was not governed by the provision or did not come within the provisions of section 1235(a).

Petitioner argues, however, that the provision of section 1.1235–1(b) supports his contention. He states that the first sentence of the regulation that, "If a transfer is not one described in paragraph (a) of this section, section 1235 shall be disregarded in determining whether or not such transfer is the sale or exchange of a capital asset" does not concern the issue here which involves not the question of whether

---

[4] Sec. 1.483–2(b)(4) [Income Tax Regs.] *Sales or exchanges of patents.* Section 483 does not apply to any payments made pursuant to a transfer described in section 1235(a) (relating to sale or exchange of patents). The preceding sentence does not apply to transfers which are not described in section 1235(a) but which receive capital gain treatment under another section of the Code.

[5] Sec. 1.1235–1(b). *Scope of section 1235.* If a transfer is not one described in paragraph (a) of this section, section 1235 shall be disregarded in determining whether or not such transfer is the sale or exchange of a capital asset. For example, a transfer by a person other than a holder or a transfer by a holder or related person is not governed by section 1235. The tax consequences of such transfers shall be determined under other provisions of the internal revenue laws.

the transfer is a sale or exchange of a capital asset, but rather the question of the applicability of section 483 with respect to unstated interest. Petitioner further says that the second sentence of section 1.1235–1(b) of respondent's regulations, which gives as an example that a transfer by a person other than a holder or a transfer by a holder to a related person "is not goverened by section 1235" shows that respondent recognizes the difference between a transfer "described in section 1235(a)" and a transfer "governed by section 1235(a)."

The clear language of both the statute and the regulation supports petitioner's position. As petitioner says, the transaction which he entered into with Kwik Lok Corp. is a transaction described in section 1235(a) even though that section is made inapplicable to him by the provisions of section 1235(d). Petitioner argues that all of the reasons for not making the provisions of section 483 applicable to transactions described in section 1235(a) are present with respect to his tranfer. He states that the agreement is one that is payable periodically over a period terminating with the transferee's use of the patent and that it is to an appreciable extent contingent upon productivity, use, or disposition of the patent. It is petitioner's argument that this type of agreement is not the type to which the provisions of section 483 were intended to apply. Respondent's answer to petitioner's argument is merely that the language of section 483 (f)(4) is clear that it does not apply to a transfer "not governed by section 1235." We agree with petitioner that the transfer of his patents does come within the provisions of the language of section 483(f)(4) and the regulations issued pursuant thereto since his transaction was one described in section 1235(a) even though because of the provision of section 1235(d), section 1235(a) is not applicable in determining whether or not the transfer by petitioner to Kwik Lok Corp. was a sale or exchange of a capital asset. The committee reports [6] are not helpful in construing the provisions of section 483 (f)(4). If any inference can drawn as to the legislative intent from

---

[6] H. Rept. No. 749, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 125, with respect to H.R. 8363 (Pub. L. 88–272) contains an explanation of the provisions that became sec. 483 with respect to interest on certain deferred payments at pp. 332–335. The only reference to the provisions of sec. 483(f)(4) is the following statement at p. 335:

*"Sales or exchanges of patents*

"Paragraph (4) of section 483(f) exempts from section 483 payments made pursuant to a transfer of the rights to a patent or an interest therein described in section 1235(a) of the code."

S. Rept. No. 830, 88th Cong., 2d Sess. (1964), 1964–1 C.B. (Part 2) 505, contains an explanation with respect to interest on certain deferred payments (the provision that became sec. 483 of the Code) at pp. 605–608. The only statement with respect to the provisions of sec. 483(f)(4) in this report is the following statement appearing at p. 607: "Fourth, this provision is not to apply in the case of payments with respect to patents, which are treated as capital gain under present law."

the committee reports, the inference would be that the word "described" used in section 483 (f) (4) was intentional since the idea was that section 483 not apply to transfers of patents in situations where under present law the tranfers were treated as capital gains.

We sustain petitioner's position since in our view a logical reading of section 483 (f) (4) excludes the transfer here involved from the provisions of section 483.

*Decision will be entered for petitioner.*