**RANSBURG CORPORATION AND SUBSIDIARIES, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 78–2389.

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1980.

Decided May 12, 1980.

Robert J. Cunningham, Chicago, Ill., for petitioners-appellants.

Thomas M. Preston, Jr., Tax Division, Dept. of Justice, Washington, D. C., for respondent-appellee.

Before SWYGERT and WOOD, Circuit Judges, and NOLAND, District Judge.[*]

* District Judge James E. Noland of the Southern District of Indiana is sitting by designation.

HARLINGTON WOOD, Jr., Circuit Judge.

In this appeal from the United States Tax Court,[1] the issue is whether the Tax Court correctly held that interest was properly imputed under Section 483 of the Internal Revenue Code [2] to deferred payments received during taxable years ending on November 30 for the years 1966 through 1972 by the taxpayer corporation in accordance with a contract for the sale of its patents, patent and utility model applications and trademarks to a Japanese corporation. The Tax Court found income tax deficiencies resulting from the imputed interest to exist for the six years in excess of $340,000.

The facts were fully stipulated and will only be summarized here. Ransburg Corporation, the taxpayer, is an Indiana corporation with both United States and Japanese patents for electrostatic coating processes and equipment. After earlier unsuccessful efforts to market its products in Japan from 1952 to 1963 the taxpayer entered into a joint venture with a Japanese corporation to promote its business in Japan. For this purpose, Ransburg Japan, a Japanese corporation, was organized in 1963 in which ultimately the taxpayer had a forty-nine percent interest. In that same year taxpayer entered into an agreement with Ransburg Japan and sold to it all its Japanese patents, patent and utility model applications and trademarks. At that time all those items qualified for tax purposes as capital assets. The original purchase price was reduced by a subsequent agreement in 1965.[3] During the years in question under the sale agreement, taxpayer received from Ransburg Japan annual payments ranging from about $200,000 to $1,202,000, all of which were reported by taxpayer as long-term capital gain for federal income tax purposes. The sale agreement provided for no interest to be due or payable on the deferred payments. The Commissioner of Internal Revenue has recharacterized a portion of those

---

1. The Tax Court opinion written by Judge Dawson was filed May 9, 1979, and is reported at 72 T.C. 271.

2. The pertinent parts of 26 U.S.C. § 483, as amended and in effect for the six years at issue, provide:

   Interest on certain deferred payments.

   (a) Amount constituting interest.—For purposes of this title, in the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment to which this section applies which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract.

   (b) Total unstated interest.—For purposes of this section, the term "total unstated interest" means, with respect to a contract for the sale or exchange of property, an amount equal to the excess of—

   (1) the sum of the payments to which this section applies which are due under the contract, over

   (2) the sum of the present values of such payments and the present values of any interest payments due under the contract.

   For the purposes of paragraph (2), the present value of a payment shall be determined, as of the date of the sale or exchange, by discounting such payment at the rate, and in the manner, provided in regulations prescribed by the Secretary. Such regulations shall provide for discounting on the basis of 6-month brackets and shall provide that the present value of any interest payment due not more than 6 months after the date of the sale or exchange is an amount equal to 100 percent of such payment.

   (c) Payments to which section applies.—

   (1) In general.—Except as provided in subsection (f), this section shall apply to any payment on account of the sale or exchange of property which constitutes part or all of the sales price and which is due more than 6 months after the date of such sale or exchange under a contract—

   (A) under which some or all of the payments are due more than one year after the date of such sale or exchange, and

   (B) under which, using a rate provided by regulations prescribed by the Secretary for purposes of this subparagraph, there is total unstated interest.

   \* \* \* \* \* \*

   (f) Exceptions and limitations.—

   \* \* \* \* \* \*

   (4) Sales or exchanges of patents.—This section shall not apply to any payments made pursuant to a transfer described in section 1235(a) (relating to sale or exchange of patents).

   \* \* \* \* \* \*

3. The original purchase price of 3,500,000,000 yen was reduced to 1,850,000,000 yen.

annual payments as interest under Section 483 in spite of the Section 483(f)(4) exception applicable to sales of patents made pursuant to a transfer described in Section 1235(a).[4]

The specific issue which evolves is whether a corporate patent owner can satisfy the requirements of the Section 483(f)(4) patent exemption provision which embraces only transfers described in Section 1235(a). The focus of the controversy is on the phrase in Section 1235(a), "by any holder," which is defined in Section 1235(b), the following subsection, as being any "individual" whose efforts created the property. If the phrase "any holder" as defined in Section 1235 is applicable, then the taxpayer, being a corporation, concededly cannot qualify as an "individual."

Taxpayer argues that the clear statutory language of Sections 483(f)(4) and 1235(a) indicates that the cross-reference in Section 483(f)(4) to Section 1235(a) without mentioning Section 1235(b) should be interpreted to mean that the definition of the term "holder" in Section 1235(b) is not applicable. In examining Section 483(f)(4), taxpayer argues that use of the word "described" in referring to Section 1235(a) evidences a congressional intent to broadly include all patent capital gain transfers within the scope of the Section 483(f)(4) exemption, and not to limit it to a limited category of patent transfers which qualify under Section 1235 as a whole. Taxpayer also argues that the bracketed phrase "relating to sale or exchange of patents" in Section 483(f)(4) evidences a congressional intent as borne out by the legislative history that the exception should be construed broadly enough to include all patent payments treated as capital gains under the law as it existed at the time

of enactment in 1964. Taxpayer's contention is that Section 1235(b) "holder" status, although required in order to qualify for and benefit from Section 1235's capital gain treatment is not required to qualify for and benefit from Section 483(f)(4)'s exception from the imputation of unstated interest. The Tax Court, on the other hand, held that the taxpayer did not qualify for the unstated interest exception as a corporation because Section 483(f)(4) references Section 1235(a), which uses the term "holder," which in turn is defined in Section 1235(b) so as to exclude corporations. In affirming the Tax Court, we add only a few comments to its decision.

The taxpayer attempts to make the distinction that Section 1235(a) is referenced in Section 483 only for a general description of patent transfers, not to add additional qualifications. It points out that the Section 1235(a) description of a transfer of "property consisting of all substantial rights to a patent . . . by any holder" was the same description of patent transfers qualifying for capital gain treatment under Code Sections 1221, 1222 and 1231 at the time of the enactment of Section 483(f)(4); that taxpayer's patent transfers are entitled to capital gains treatment is not disputed by the Commissioner in this appeal.

Nevertheless, Congress in Section 483(f)(4) chose to reference Section 1235(a), not the other sections. We do not see how we can read Section 1235(a) even for limited descriptive purposes and disregard its use of "holder' as part of the description. If we are not to disregard the term "holder" entirely, we must either give it our own meaning much broader than Section 1235(b) provides or apply the Section 1235(b) defini-

4. 26 U.S.C. § 1235 provides in pertinent part:
 Sale or exchange of patents.
 (a) General.—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or
 (2) contingent on the productivity, use, or disposition of the property transferred.
 (b) "Holder" defined.—For purposes of this section, the term "holder" means—
 (1) any individual whose efforts created such property . . . [.]
 * * * * * *

tion. We do not believe we can eliminate the term "holder" from the description of a patent transfer, nor interpret "holder" differently for one purpose than for another, particularly when the same Code section, Section 1235, itself defines what the term means as used in that section. That Section 1235(b) states that its "holder" definition is for the purpose of Section 1235 only does not infer that on occasion for some purposes we may give it some other meaning when used in Section 1235(a). Taxpayer correctly points out that Section 1235(a) does not reference Section 1235(b), but that does not mean Section 1235(b) is to be ignored. It is equally true that Congress in Section 483(f)(4) could have referenced not only Section 1235(a) but also Section 1235(b). That would have been helpful, but it is not essential to our interpretation of the statute. If we are to fill-in for less than clear legislative draftsmanship, we do not choose to undertake any more remodeling of the statutory structure than is reasonably needed to divine the meaning of the statute without doing violence to it.

If Congress meant something else, it easily could have said what it meant by describing a patent transfer in an additional line or two within Section 483(f)(4) and thereby avoided the roundabout way with obvious potential for misleading taxpayers and courts. We also believe that the taxpayer reads more into the bracketed phrase, "relating to sale or exchange of patents," in Section 483(f)(4) in referencing Section 1235(a) than it deserves. Section 1235(a) does relate to the sale or exchange of patents, but "holder" is very much a part of it. The Tax Court considered the language as identifying the nature and purpose of Section 1235(a). Taxpayer would have us give the phrase more importance than that by attributing to it an intent to broaden what Section 1235(a) says by giving our own meaning to "holder." If Congress intended such an obscure effect, its less than clear draftsmanship has only been compounded.

It appears to us, examining the face of the statute, that for purpose of an exception for imposition of unstated interest, Congress chose to limit the benefit to a certain type of transferor.

Taxpayer relies in part on *Floyd G. Paxton*,[5] *Curtis T. Busse*,[6] and *Goldman v. United States*.[7] So did the taxpayer in *Busse v. United States*, 543 F.2d 1321 (Ct.Cl.1976), which involved a related problem. The Court of Claims in holding that to qualify for a Section 483(f)(4) exemption, the taxpayer must meet the requirements of the term "holder" as that term is used in Section 1235(a) and defined in Section 1235(b) sufficiently responded to that argument.

Plaintiff's reliance on *Busse v. C. I. R.*, . . . *Paxton v. C. I. R.*, . . . *Goldman v. United States*, . . . which plaintiff recognizes as readily distinguishable from the instant case, provide no support for plaintiff's proposition that in determining whether section 1235(a) describes her patent transfer for purposes of deciding if the (f)(4) exemption of section 483 applies, all other parts of section 1235 must be ignored. In those cases the courts ruled not that § 1235(b) must be disregarded in determining whether a transfer meets the conditions of § 1235(a) as to come within the § 483(f)(4) exemption but that § 1235(d) can be disregarded for that purpose. Section 1235(d) states an exception to the general rule of the section by providing that transfers otherwise qualifying for tax treatment under section 1235(a) shall not be accorded that treatment if made to certain related persons. Section 1235(d) states an exception to the rule of section 1235(a) whereas section 1235(b) states a requirement to that rule. For purposes of section 483(f)(4), exceptions to section 1235(a) can rightfully be ignored, but not requirements to that section. The Seventh Circuit's acceptance of the Commissioner's view on this point disposes of plaintiff's *Busse/Pax-*

---

**5.** 53 T.C. 202 (1969), *nonacq.*, 1971–2 C.B. 4, *nonacq. withdrawn and acq. substituted therefor*, 1978–1 C.B. 2.

**6.** 58 T.C. 389 (1972), *aff'd*, 479 F.2d 1147 (7th Cir. 1973), *acq.*, 1978–1 C.B. 1.

**7.** 1974–2 U.S.Tax.Cas. ¶ 9723 (E.D.La.1974).

*ton/Goldman* argument and renders unnecessary further elaboration. We agree with the Seventh Circuit's acceptance of the Service's position that:

"* * * Section 1235-type transactions disqualified because of an unauthorized 'transfer' would not be subject to imputed interest, but Section 1235-type transactions disqualified because of failure to meet the definition of 'holder' would be so subject. * * *."

[*Busse v. Commissioner*, 479 F.2d 1147, 1152 (7th Cir. 1973).[8]] 543 F.2d at 1326.

The taxpayer further urges us to at least adopt and apply our own broad meaning of the term "holder" so that the term will mean "any owner" of a patent and not just an individual. Regardless of how "holder" may be defined in the dictionary, or used elsewhere in the Code, there is no such easy escape from the statutory modification of the term's other possible meanings accomplished by Section 1235(b) for the use of the term in Section 1235(a).

Taxpayer finds some support in the General Explanation section[9] of the House Committee Reports published when Section 483 was being considered:

[T]his provision is not to apply in the case of payments with respect to patents, which are treated as capital gain under present law.

It is true that at that time capital gain treatment for patent transfers was broadly allowed under the sale or exchange provisions of Sections 1221, 1222 and 1231, and not merely under the provisions of Section 1235 for specified individuals. Corporations upon the sale of their patents were entitled to capital gain treatment. *Oak Manufacturing Co. v. United States*, 301 F.2d 259

(7th Cir. 1962). Nevertheless Section 1235 was then and remains the only Code section which specifically provides capital gain treatment for sales or exchanges of patents, and that is the particular section which was referenced in Section 483(f)(4). The "Technical Explanation" of the House Report[10] restricts, as does the statute, Section 483(f)(4) exemptions to transfers described in Section 1235(a). Any support the taxpayer gleans out of that meager legislative history is too doubtful and conflicting to be of assistance. That was also the earlier view we expressed in *Busse v. Commissioner*, 479 F.2d at 1151.

The taxpayer urges us to declare the Commissioner's regulation interpreting the purpose and effect of Section 483(f)(4) to be invalid in whole or in part as unreasonable and inconsistent with Section 483(f)(4).[11] To the extent that the regulation suggests that the term "holder" in Section 1235(a) is defined by Section 1235(b), we find no fault with the regulation. Beyond that we need not consider the regulation further for the purposes of this case.

Taxpayer urges us not to abandon our pronouncement in *Busse v. Commissioner*, 479 F.2d at 1151, that "in a doubtful situation the taxpayer is entitled to the benefit of the doubt." We stand by that stated philosophy, which may be acceptable to most everyone except possibly the Commissioner, but its application requires more of a doubt than we find here.

AFFIRMED.

---

8. Our "holder" holding in *Busse v. Commissioner* was, however, not necessary to that decision which concerned a patent transfer between related persons which we held nevertheless to be entitled to the Section 483(f)(4) unstated interest exception. We noted that the taxpayer came within the Section 1235(b) definition of "holder." 479 F.2d at 1152.

9. H.R.Rep.No.749, 88th Cong., 1st Sess. 72–74 (1963) U.S.Code Cong. & Admin.News 1964, pp. 1313, 1382.

10. *Id.* at A87.

11. Treas.Reg. § 1.483–2(b)(4) (1966):
   *Sales or Exchanges of Patents.* Section 483 does not apply to any payments made pursuant to a transfer described in section 1235(a) (relating to sale or exchange of patents). The preceding sentence does not apply to transfers which are not described in section 1235(a) but which received capital gain treatment under another section of the Code.