SAMUEL E. KELLEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kelley v. Commissioner
Docket No. 5559-81.
United States Tax Court
T.C. Memo 1982-728; 1982 Tax Ct. Memo LEXIS 20; 45 T.C.M. (CCH) 353; T.C.M. (RIA) 82728; December 20, 1982. Richard J. Kufta, for the petitioner. Edward D. Fickess, for the respondent. HAMBLEN
MEMORANDUM OPINION HAMBLEN, Judge: Respondent determined a deficiency of $6,900 in petitioner's 1976 Federal income tax. The issue for decision is whether two sailboats that petitioner purchased in the United States and leased for use in the British Virgin Islands qualify for the investment tax credit under section 38. [1]
All the facts have been stipulated and are found accordingly. Petitioner Samuel E. Kelley resided in Binghamton, New York, when he filed his petition in this case. He timely filed his 1976 Federal income tax return with the Internal Revenue Service Center, Andover, Massachusetts. On or about October 4, 1976, petitioner executed a Yacht Purchase Agreement (hereinafter "the purchase agreement") whereby he agreed to purchase two new Gulfstar 37-foot, full-cabin sailboats with diesel auxilliary engines from The Moorings, Ltd. *22 (hereinafter "ML") in New Orleans, Louisiana, for a total cost of $103,500. Each sailboat was certified by the builder to have a net tonnage of ten tons. Petitioner financed his acquisition of the two sailboats by obtaining an installment loan from the Chemical Bank, Binghamton, New York. Pursuant to two identical "Lease Agreements" (hereinafter "the leases"), dated September 28, 1976, petitioner, as lessor, agreed to lease the two sailboats to ML, as lessee, for a term of three years, plus automatic extensions of one year each until such time as either party gave notice of cancellation to the other. Under the leases, petitioner agreed to pay $2,400 for the delivery of each boat to ML's dock in Tortola, British Virgin Islands, where ML intended to charter the sailboats to third parties. Pursuant to the leases, petitioner reserved the right to use the boats personally at any time and for such periods as he might desire, subject to any prior charter by ML, under a fee schedule set forth in the leases.Each lease provided that ML would pay a monthly rental of $416.67, and ML agreed to insure the boats and to pay all of the operating and maintenance expenses. The leases remained *23 in effect until September 28, 1981, when they both were terminated. Although the purchase agreement called for the delivery of the sailboats F.O.B., St. Petersburg, Florida, the boats were actually delivered in November 1976 directly to Road Town, Tortola, British Virgin Islands, by ML, as dealer for Gulfstar and agent for petitioner. Since petitioner's acquisition and lease of the sailboats to ML, they have been physically located in Tortola, British Virgin Islands, and have only been used for bareboat charters to third parties in and around the waters of Tortola or for an occasional trip to the U.S.Virgin Islands. Immediately after purchasing the sailboats, petitioner registered them with the Louisiana Wildlife and Fisheries Commission, and they were assigned Louisiana State registration numbers 641 LT and 642 LT. Petitioner's sailboats were never registered, enrolled, or licensed under the laws of the United States by the United States Coast Guard; [2] in fact, no registration of any other form was ever made with another governmental agency. *24 On his 1976 tax return, petitioner claimed an investment tax credit for the two sailboats he purchased during that year. In the notice of deficiency, respondent determined that petitioner was not entitled to the claimed investment tax credit for the sailboats. We must determine whether petitioner is entitled to an investment credit for his two sailboats. Section 38 allows a taxpayer to claim a credit for investments in certain qualified property designated as "section 38 property." The term "section 38 property" generally includes depreciable tangible personal property with a useful life of three years or more. Such property, however, does not qualify as section 38 property pursuant to section 48(a)(2)(A) if it is used predominantly outside the United States, unless it falls within a specific exception to such rule. Section 48(a)(2)(B)(iii) specifically excepts from such rule "any vessel documented under the laws of the United States which is operated in the foreign or domestic commerce of the United States * * *." Respondent maintains that petitioner is not entitled to claim an investment credit for his sailboats because such boats do not constitute section 38 property. It *25 is respondent's position that the sailboats do not qualify as section 38 property because in the year acquired they were used predominantly outside the United States. Petitioner, on the other hand, insists that his sailboats qualify for the investment credit under the exception provided in section 48(a)(2)(B)(iii). We hold for respondent. It is clear that petitioner's sailboats were used predominantly outside the United States during 1976, and petitioner has not argued otherwise. See sec. 1.48-1(g)(1), Income Tax Regs. Furthermore, the record establishes that the sailboats were neither documented under the laws of the United States nor operated in the foreign or domestic commerce of the United States as is required under section 48(a)(2)(B)(iii). The documentation of a vessel is the administrative process by which a vessel is registered or licensed as a vessel of the United States for purposes of identification and is certified as authorized to engage in a specific trade. See generally H. Rept. No. 96-428 (1979), to accompany H.R. 1196 (Vessel Documentation Act, Pub. L. 96-594, 94 Stat. 3453 (1980)). Indeed, a vessel of the United States is defined as a vessel documented *26 under the laws of the United States. 46 C.F.R. sec. 66.03-7 (1976). Generally, only a vessel owned by a citizen of the United States is entitled to documentation. See 46 C.F.R. sec. 67.01-5 (1976). Section 1.48-1(g)(2)(iii), Income Tax Regs., provides: A vessel is documented under the laws of the United States if it is registered, enrolled, or licensed under the laws of the United States by the commandant, United States Coast Guard. Vessels operated in the foreign or domestic commerce of the United States include those documented for use in foreign trade, coastwise trade, or fisheries; * * *. All authority pertaining to the documentation of vessels under the laws of the United States has been delegated to the Commandant, United States Coast Guard. 46 C.F.R. part 66 (1966). Consequently, the above-quoted regulation is unquestionably a valid exercise of the authority vested in the respondent pursuant to section 38(b). See Commissioner v. South Texas Lumber Co.,333 U.S. 496 (1948). Since petitioner's sailboats were only registered with the Louisiana Wildlife and Fisheries Commission, they were not documented under the laws of the United States. Nevertheless, *27 petitioner contends that his registration of the sailboats with the State of Louisiana was tantamount to the registration of the sailboats with the United States Coast Guard. According to petitioner, the use to which he put his sailboats during 1976 did not require them to be documented and, as such, registration with the Coast Guard would have been a meaningless gesture. Furthermore, petitioner asserts that the Coast Guard has given tacit recognition to the registration of his sailboats with the State of Louisiana because the Coast Guard itself issues similar registrations in certain states. Therefore, petitioner concludes that his Louisiana registration was sufficient to satisfy the documentation requirement of section 48(a)(2)(B)(iii). We must reject this argument. First, the words that Congress used are clear and unambiguous and must be applied as written. See United States v. American Trucking Associations, Inc.,310 U.S. 534, 543 (1940); Busse v. Commissioner,58 T.C. 389, 392 (1972), affd. 479 F.2d 1147 (7th Cir. 1973). There is simply no escaping the fact that the literal language of section 48(a)(2)(B)(iii) is inapplicable *28 to petitioner's sailboats. Second, petitioner's attempt to equate the Louisiana registration of his sailboats with their documentation under the laws of the United States is misconceived. The Federal Boat Safety Act of 1971, Pub. L. 92-75, 85 Stat. 213, 46 U.S.C. section 1451 et seq. (1976), generally provides that vessels equipped with propulsion machinery of any type shall have a number issued by the proper issuing authority in the state in which the vessel is principally used. If a state has an approved numbering system, it acts as the issuing authority. In those states that do not have an approved numbering system, the United States Coast Guard acts as the issuing authority. See 46 U.S.C. sec. 1467 (1976); 33 C.F.R. part 173 (1976). Furthermore, the numbering requirement does not apply to a vessel that has or is required to have a valid marine document as a vessel of the United States. See 46 U.S.C. sec. 1466 (1976); 33 C.F.R. sec. 173.11 (1976). The declared purpose of The Federal Boat Safety Act of 1971 is to promote boating safety, and the Act is in no way connected with the *29 documentation process. See 46 U.S.C. sec. 1451 (1976). Consequently, under The Federal Boat Safety Act of 1971, the Coast Guard simply administers a numbering system in certain states and this numbering system is not, as apparently argued by petitioner, a substitute for documentation. Finally, in arguing that the registration of his sailboats would have been a meaningless gesture, petitioner has missed a crucial point. Although petitioner's sailboats were not required to be documented during 1976, such is the case because his sailboats were not operated in the foreign or domestic commerce of the United States during that year. If his sailboats had been engaged in the foreign or domestic trade of the United States, petitioner would have been required to document them with the United States Coast Guard. [3] If anything, petitioner's sailboats were used in the tourist trade of the British Virgin Islands and not the foreign commerce of the United States. *30 The investment credit was originally enacted pursuant to the Revenue Act of 1962, Pub. L. 87-834, 76 Stat. 960, 1962-3 C.B. 111.The Senate Finance Committee expressed the purpose of the investment credit in the following terms: The objective of the investment credit is to encourage modernization and expansion of the Nation's productive facilities and thereby improve the economic potential of the country, with a resultant increase in job opportunities and betterment of our competitive position in the world economy. * * * [S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 717.] Property used predominantly outside the United States was excluded from the benefits of the investment credit because the primary purpose of the credit was to encourage investment within the United States. H. Rept. No. 1447, 87th Cong., 2d Sess., 1962-3 C.B. 405, 416; S. Rept. No. 1881, supra at 723. Pursuant to section 48(a)(2)(B)(iii), however, Congress provided an exception to such exclusion for properly documented United States vessels operated in the foreign or domestic commerce of the United States. Obviously, this exception was intended *31 to promote capital investments in vessels that play an integral and productive role in the nation's economy (e.g., the United States merchant marine). Clearly, the use of petitioner's sailboats for charter in the British Virgin Islands cannot in any way be viewed as contributing to the productivity of the United States' economy. Consequently, we find that petitioner's sailboats not only fail to satisfy the express requirements of section 48, but also fall outside the intended purpose of the investment credit. Petitioner, however, argues that his purchase of the sailboats in the United States certainly serves the purpose of encouraging investment therein because it required an expenditure of more than $100,000 in the United States. Once again, petitioner's argument misses the mark. The investment credit was not enacted to encourage consumption, but rather to encourage capital investment, that is, investments in productive assets which would stimulate the expansion of the nation's economy. Accordingly, since petitioner's sailboats do not constitute section 38 property, we sustain respondent's determination.[4]
*32 To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue.↩
2. The use to which petitioner's sailboats were put during 1976 did not require them to be registered, enrolled, or licensed by the Coast Guard.↩
3. In addition, petitioner's sailboats could have been documented as yachts by the United States Coast Guard. 46 C.F.R. sec. 67.71-1 (1976).Such documentation is optional, and a vessel so documented must be used exclusively for pleasure and may not engage in any trade. See 46 C.F.R. sec. 67.01-3↩ (1976).
4. Respondent argued, in the alternative, that petitioner is not entitled to claim an investment credit for his sailboats under sec. 46(e)(3). Since we have held that the sailboats do not constitute section 38 property under sec. 48(a)(2)(A), we need not address respondent's alternative argument.↩